## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KONAIR US, LLC,

     Plaintiff,

          v.

DGI II, LLC; TERESA DAU; WELLS FARGO
TRUST COMPANY, NATIONAL
ASSOCIATION f/k/a WELLS FARGO BANK
NORTHWEST, NATIONAL ASSOCIATION;
and AMERICAN JET BROKERS,

     Defendants.

Civil Action No.
1:19-cv-05728-SDG

## <u>OPINION AND ORDER</u>

This matter is before the Court on the following: (1) a motion to dismiss the

Second Amended Complaint filed by Defendant Wells Fargo Trust Company,

National Association f/k/a Wells Fargo Bank Northwest, National Association

(Wells Fargo) [ECF 29]; (2) a motion to dismiss the Second Amended Complaint

filed by Defendants DGI II, LLC (DGI) and Teresa Dau (collectively, the Dau

Defendants) [ECF 30]; (3) a purported *pro se* motion to dismiss filed by Defendant

American Jet Brokers, LLC (AJB) [ECF 49]; (4) a motion to amend and file a Third

Amended Complaint by Plaintiff Konair US, LLC (Konair) [ECF 43];[1] and (5) a motion for jurisdictional discovery filed by Konair [ECF 52]. For the following reasons, Konair's motion for leave to amend is **GRANTED**; Wells Fargo's motion is **GRANTED**; the Dau Defendants' motion is **GRANTED**; AJB's motion is **DENIED**; and Konair's motion for jurisdictional discovery is **DENIED AS MOOT**.

## I.    BACKGROUND[2]

This case concerns the sale of an Avions de Transport Regional model ATR 42-320 aircraft bearing serial number 128 (the Aircraft).[3] On June 15, 2018, Konair purchased the Aircraft for $925,000.[4] Prior to that sale, DGI owned—and Wells

---

[1]   Although Konair styles its request as one to file a "Second Amended Complaint," Konair actually seeks to file its fourth independent pleading in this case [ECF 1; ECF 3; ECF 25; ECF 43]. Therefore, the Court will refer to the documents as Second Amended Complaint and Third Amended Complaint, respectively.

[2]   The Court treats the following factual allegations as true for purposes of this motion. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[3]   ECF 25, ¶ 1. Although Konair has filed a motion for leave to file a Third Amended Complaint, which the Court finds should be granted, the Court will cite exclusively to the Second Amended Complaint to alleviate confusion, particularly since the pleadings are substantially identical.

[4]   *Id*. ¶¶ 104, 106.

Fargo held title in trust to—the Aircraft.[5] In 2015, DGI—through Wells Fargo—entered into an agreement with Air Republiq Airlines Corporation (Air Republiq) to lease the Aircraft.[6] The lease required Air Republiq to pay all required taxes on the Aircraft.[7] On approximately February 6, 2016, the Aircraft arrived at Ninoy Aquino International Airport in Manila, Philippines.[8] On March 4, 2016, Air Republiq requested approval from the Republic of the Philippines Bureau of Customs (BOC) to re-export the Aircraft.[9] The BOC responded by requiring the posting of a bond totaling a certain amount of taxes and duties owed on the Aircraft.[10] In July 2016, the lease between DGI and Air Republiq was terminated, and the BOC issued a Notice of Declaration of Abandonment for the Aircraft.[11] Konair alleges that, by at least November 24, 2016, some or all of the Dau Defendants and Wells Fargo became aware that the BOC had issued the abandonment notice that prevented the Aircraft from being removed from the

---

[5]   *Id.* ¶¶ 50–51.

[6]   *Id.* ¶ 52.

[7]   *Id.* ¶ 53.

[8]   *Id.* ¶ 54.

[9]   *Id.* ¶ 55.

[10]   *Id.* ¶ 56.

[11]   *Id.* ¶¶ 57–58.

Philippines.[12] Nonetheless, Konair posits that none of Defendants made the payments necessary to satisfy the outstanding amounts owed.[13]

According to Konair, at some point AJB—or its owner, William Stawski— was hired to act as an agent for selling the Aircraft.[14] In April 2018, Konair received an offer to purchase the Aircraft for $1.2 million.[15] Konair communicated a counter-offer of $900,000, as well as its intention to fly the Aircraft out of the Philippines after the sale.[16] None of the Defendants notified Konair that the BOC demanded certain taxes be paid on the Aircraft before it could be removed from the Philippines, or that the BOC had declared the Aircraft abandoned.[17] On approximately May 16, 2018, the parties agreed to sell the Aircraft to Konair for $925,000.[18] The sale of the Aircraft was completed through the execution of "Sale Documents," which included: (1) two bills of sale;[19] (2) a Sale Letter

---

[12]  *Id.* ¶¶ 68–71.

[13]  *Id.* ¶¶ 74–82.

[14]  *Id.* ¶ 83.

[15]  *Id.* ¶ 84–87.

[16]  *Id.* ¶ 86.

[17]  *Id.* ¶¶ 87–92.

[18]  *Id.* ¶ 95.

[19]  ECF 29-3 (Bill of Sale); ECF 29-4 (FAA Bill of Sale).

Agreement;[20] (3) a Beneficial Interest Sale and Purchase Agreement (BISPA);[21] and (4) an Assignment and Assumption Agreement.[22] The Sale Documents provided that title to the Aircraft would be transferred to Konair on June 15, 2018.[23]

In August 2018, Konair learned that the BOC would not permit the Aircraft to be removed from the Philippines.[24] Konair demanded Defendants pay the requisite amount to satisfy the outstanding amounts demanded by the BOC.[25] Defendants refused to do.[26] Because of this, Konair has never removed the Aircraft from the Philippines.[27]

Konair initiated this action on December 20, 2019.[28] On the same day, Konair filed its First Amended Complaint.[29] On February 25, 2020, Konair filed its Second

---

[20]   ECF 29-5 (Sale Letter Agreement).

[21]   ECF 29-6 (BISPA).

[22]   ECF 29-7 (Assignment and Assumption Agreement). *See* ECF 25, ¶¶ 101–02.

[23]   ECF 25, ¶ 104.

[24]   *Id.* ¶ 109.

[25]   *Id.* ¶¶ 110–15.

[26]   *Id.*

[27]   *Id.* ¶¶ 117–18, 122.

[28]   ECF 1.

[29]   ECF 3.

Amended Complaint.[30] The Second Amended Complaint asserts five causes of action collectively against all Defendants for: breach of contract (Counts I and II); negligent misrepresentation (Count III); fraudulent misrepresentation (Count IV); and fraudulent inducement (Count V).[31] On March 10, 2020, Wells Fargo and the Dau Defendants filed separate motions to dismiss.[32] Konair filed its responses in opposition to those motions on March 27.[33] Wells Fargo and the Dau Defendants filed separate replies on April 17, 2020.[34] On April 23, Konair filed a motion for leave to file a Third Amended Complaint.[35] On May 1 and May 6, respectively, Wells Fargo and the Dau Defendants filed responses not contesting Konair's leave to amend.[36] On May 18, AJB—attempting to proceed *pro se*—filed its motion to

---

[30]   ECF 25. The Second Amended Complaint mooted then-pending motions to dismiss filed by Wells Fargo and the Dau Defendants [ECF 21; ECF 22; ECF 23].

[31]   *See generally* ECF 1.

[32]   ECF 29; ECF 30.

[33]   ECF 36; ECF 37.

[34]   ECF 41; ECF 42.

[35]   ECF 43.

[36]   ECF 45; ECF 48.

dismiss.[37] Konair filed a response in opposition to AJB's motion on May 29.[38] AJB did not file a reply.

## II.   DISCUSSION

### a.   Konair's Motion for Leave to File a Third Amended Complaint

As part of their motion to dismiss, the Dau Defendants assert Konair—a limited liability company—has not sufficiently alleged subject matter jurisdiction because it did not allege the citizenship of each of its members. Konair requests permission to cure this deficiency by alleging the citizenship of each of its members. None of the Defendants opposed this limited amendment.

According to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." When a party seeks leave from the Court to amend a pleading, "[t]he court should freely give leave when justice so requires." *Id*. Notwithstanding, the ultimate decision of whether to grant leave to amend remains committed to the Court's sound discretion. *S. Grouts & Mortars. Inc. v. 3M Co.*, 575 F.3d 1235, 1240 (11th Cir. 2009); *SavaSeniorCare, LLC v. Beazley Ins. Co.*, 309 F.R.D. 692, 696 (N.D. Ga. 2015)

---

[37]   ECF 49. On May 1, Konair filed a proof of service showing AJB had been served on April 28, 2020 [ECF 44].

[38]   ECF 52.

("[L]eave to amend is by no means automatic. The trial court has extensive discretion in deciding whether to grant leave to amend.") (citations and quotation markets omitted).

The Court finds good cause to allow the amendment. First, the Dau Defendants and Wells Fargo did not contest it. Although AJB did not file a response expressing its opinion, it is a Michigan limited liability company without counsel that cannot represent itself in this Court. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985). In any event, the minor revisions in the Third Amended Complaint alleviate any concern that this Court lacks subject matter jurisdiction.[39] That justifies permitting the amendment. Konair's motion to amend is **GRANTED**.

A subsequent question flowing from the answer to this first issue is whether the Third Amended Complaint moots the pending motions to dismiss. The general rule in this district is that "[a]n amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint." *S. Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1284, 1287 n.1 (N.D. Ga. 2013).

---

[39] *See* ECF 48 (Dau Defendants' Response) ("In any event, if the allegations are true, it does appear that this Court has subject matter jurisdiction over this matter.").

The Undersigned's Civil Standing Order entered in this case articulates the following procedure:

> If, in response to a motion to dismiss, a plaintiff files an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1), the defendant-movant is directed to determine—within 10 days after the filing of the amended complaint—whether the pending motion to dismiss has been rendered moot. If so, the defendant shall withdraw it.[40]

Although the Dau Defendants and Wells Fargo filed responses not opposing the amendment to Konair's pleading, neither commented on whether the Third Amended Complaint would render the pending dispositive motions moot. Reviewing the Third Amended Complaint and pending motions, the Court finds it does not.[41] Although the Third Amended Complaint moots one jurisdictional argument asserted by the Dau Defendants, it has no effect on the remainder of the arguments raised by the parties. Therefore, the Court finds the dispositive motions are not mooted by the Third Amended Complaint and will address each motion in turn.

---

[40]   ECF 7.

[41]   *See* ECF 43-4 (proposed Third Amended Complaint).

**b.     Dispositive Motions**

As noted, each Defendant has filed or joined a motion to dismiss. The Court addresses each motion separately.

*i.*     **Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

This pleading standard "does not require detailed factual allegations," but "requires more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted). A complaint providing "mere 'labels and conclusions,' 'formulaic recitations of the elements of a cause of action,' or 'naked

assertions devoid of further factual enhancement'" will not suffice. *Kinsey v. MLH Fin. Servs., Inc.*, 509 F. App'x 852, 853 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

### ii. Wells Fargo's Motion to Dismiss

Wells Fargo argues Konair's claims against it must be dismissed because Wells Fargo acted solely in its capacity as trustee and cannot be held liable in its individual capacity. Konair disagrees, averring that Wells Fargo's status as trustee cannot insulate it from claims by third parties. At the outset, the parties raise a question of which state's substantive law governs. Konair points to either Georgia or New York law. Wells Fargo suggests Utah law controls, but if Georgia or New York law is applied, it maintains the ultimate result remains the same. The choice of law dispute ostensibly derives from a second inquiry; may the Court consider the Trust Agreement executed between Wells Fargo and DGI—attached as Exhibit 1 to Wells Fargo's motion to dismiss—without converting that motion into one for summary judgment?

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). Under Georgia law, "contractual choice-of-law provisions will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *Nat'l Freight, Inc. v. Consol. Container Co., LP*, 166 F. Supp. 3d 1320, 1326 (N.D. Ga. 2015) (quoting *CS–Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 283 Ga. 426, 428 (2008)). As noted, Wells Fargo and DGI executed the Trust Agreement. Konair was not a party, has not asserted a claim under that agreement, and has not attached it to any iteration of its pleadings.

The general rule is that the Court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing Fed. R. Civ. P. 12(b)). The Eleventh Circuit has adopted the "incorporation by reference" doctrine, which states that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). *See also Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of

incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.").

However, the Court need not determine if the Trust Agreement fits within the incorporation by reference doctrine. At this stage, the agreement is only relevant as to the choice of law question. The agreement contains a provision stating:

> The Trust has been accepted by Owner Trustee and will be administered in the State of Utah. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of Utah without giving effect to principles of conflict of law.[42]

Konair's claims against Wells Fargo do not challenge the "validity, construction [or] enforcement" of the Trust Agreement. Nor does Konair allege Wells Fargo breached that agreement—a claim that Konair would likely not have standing to assert in any event. Konair instead argues Wells Fargo—in its capacity as trustee—breached the Bill of Sale. Although the Court certainly believes the Trust Agreement is central to Konair's claims against Wells Fargo, that agreement and

---

[42]   ECF 29-2, at 12 § 8.06.

its choice of law provision is inapplicable to the instant inquiry. Thus, Utah law does not govern.

This leaves a choice between Georgia or New York law. The Bill of Sale expressly states: "This Bill of Sale shall be governed by, and construed in accordance with, the laws of the State of New York, U.S.A."[43] Neither party has suggested the application of New York law violates public policy or is prejudicial to any state's interests. Moreover, although the general rule is that contractual choice of law clauses do not apply to tort claims unless broad in scope—*Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 F. App'x 865, 875 n.11 (11th Cir. 2018)—all of Konair's claims against Wells Fargo relate to the negotiation and execution of the Bill of Sale and affiliated documents. Since these claims are closely intertwined with the contractual choice of law provision, the Court applies New York law to each.

The common law in New York "presumes that in a contract between a trustee and a third party, personal liability on behalf of the trustee attaches unless the contracting parties have clearly agreed otherwise." *Societe Generale v. U.S. Bank Nat'l Ass'n*, 325 F. Supp. 2d 435, 437 (S.D.N.Y. 2004) (citing *Heisler v. Nole*,

---

[43]   ECF 29-3, at 2. The Court does not adopt the capitalized letter format employed in the Bill of Sale.

84 N.Y.S.2d 70, 71 (N.Y. Sup. Ct. 1948); *E. River Sav. Bank v. Samuels*, 31 N.E.2d 906, 906 (N.Y. 1940); *O'Brien v. Jackson*, 60 N.E. 238, 239 (N.Y. 1901)).[44] Put another way, "while a trustee may, under certain circumstances, be indemnified for contracts made in his capacity as trustee, liability will ordinary lie against him in his individual capacity." *Societe Generale*, 325 F. Supp. 2d at 437–38 (citation omitted). This presumption of individual liability "can be overcome by contractual language making clear that personal liability was not intended." *Id*. Specifically, although a trustee is not required to include "an express disclaimer of personal liability," there must be "some clearly limiting language . . . for example, a proviso that a contract is entered 'not in the trustee's individual capacity, but solely as owner trustee.'" *Id*. (quoting *Jet Star Enters. Ltd. v. CS Aviation Servs.*, No. 01 CIV. 6590 (DAB), 2004 WL 350733, at *7 (S.D.N.Y. Feb. 25, 2004) ("The opening paragraph of the Sale Agreement and the Bank's signature on the Agreement, both of which specify the Bank entered the Agreement not in its individual capacity,

---

[44] To date—and unlike Georgia—New York has not adopted a version of the Uniform Trust Code, which supplants the common law and in relevant part states that: "Except as otherwise provided in the contract, a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administering the trust if the trustee in the contract disclosed the fiduciary capacity." Unif. Trust Code § 1010. *See* O.C.G.A. § 53-12-308.

but solely as owner trustee, is precisely the type of contract provision that courts have found protects a trustee from personal liability.")) (quotation marks omitted).

Here, the first line of the Bill of Sale conspicuously states that Wells Fargo executed the agreement "*not in its individual capacity, but solely as owner trustee*" of the Aircraft.[45] At the end of the one-page Bill of Sale, Wells Fargo signed the agreement and reiterated the same limiting language.[46] According to *Societe Generale* and *Jet Star*, this is the precise type of specific and explicit disclaimer that exculpates a trustee from individual liability on a transaction administered solely on behalf of the trust. Therefore, Konair should have known Wells Fargo acted only in its capacity as trustee and cannot be held individually liable. Konair's claims against Wells Fargo must be dismissed with prejudice.[47]

---

[45] ECF 29-3, at 2 (emphasis added).

[46] *Id*.

[47] The Court notes that the result would be the same even if Georgia substantive law were applied. O.C.G.A. § 53-12-308. *See also Jeffress v. U.S. Bank Nat'l Ass'n*, No. 4:14-cv-231-HLM-WEJ, 2014 WL 12481342, at *2 (N.D. Ga. Oct. 27, 2014), *report and recommendation adopted*, No. 4:14-cv-0231-HLM, 2014 WL 12521299 (N.D. Ga. Nov. 14, 2014) (noting that, "[a]t common law, a trustee's liability to a third party was not conditioned upon personal fault," but the "Revised Georgia Trust Code explicitly exempts trustees from personal liability" in designated situations).

### *iii.*     **The Dau Defendants' Motion to Dismiss**

The Dau Defendants argue Konair's claims against them must be dismissed for two reasons: (1) Konair lacks standing to assert the claims and (2) the Second Amended Complaint fails to state plausible claims. Konair disagrees with both rationales. The Court addresses each in turn.

### 1.     **Konair Has Standing**

The Dau Defendants contend Konair lacks standing. In the Second Amended Complaint, Konair alleges that, after the purchase, "title of the Aircraft was conveyed to UMB Bank to hold the title in trust for [Konair]."[48] At some point after the sale, avers Konair, "UMB divested its interest in the Aircraft and no longer holds the Aircraft in trust for [Konair], and assigned to [Konair] any and all rights against any person or entity in relation to the Aircraft."[49] According to the Dau Defendants, Konair should be required to attach the alleged assignment between UMB Bank and Konair. Going further, the Dau Defendants argue Konair lacks standing to assert its fraud claims because they cannot be assigned under Georgia law.

---

[48]   ECF 25, ¶ 107.

[49]   *Id.* ¶ 108.

The Dau Defendants are correct that Konair has not attached the assignment agreement to any of its pleadings showing UMB Bank actually assigned it title to the Aircraft. Nor does Konair quote the terms of the alleged assignment agreement. However, Konair is not required to do so. *E.g., Pagniello v. Unified Caring Ass'n*, No. 1:19-CV-03969-SCJ, 2020 WL 4730981, at *3 (N.D. Ga. May 14, 2020) (collecting cases). At the pleading stage, Konair is permitted to allege the existence of the assignment agreement. *E.g., McClelland v. First Ga. Cmty. Bank*, No. 5:09-cv-256 CAR, 2010 WL 3199349, at *3 (M.D. Ga. Aug. 12, 2010). Although not overly specific, the factual allegations articulated above are enough for Konair to meet its burden under Rule 8.

The Dau Defendants' second standing argument is likewise unpersuasive. The Dau Defendants cite to Georgia law for the proposition that personal tort and fraud claims cannot be assigned. O.C.G.A. § 44-12-24. However, as noted above, the Court finds that New York substantive law applies to Konair's contract and tort claims; the Georgia procedural rule is inapplicable. Unlike Georgia law, "New York law permits free assignability of fraud claims." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 478, 485 (S.D.N.Y. 2012). *See also Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 236 (S.D.N.Y. 2007) ("With limited exceptions not applicable here, New York permits

the assignment of tort claims."). In any event, the Court reads Konair's allegations to plead fraud as to the Dau Defendants' misrepresentations and omissions *made to Konair* during circumstances surrounding the purchase of the Aircraft. Since these tort claims belong to Konair, no assignment was required. Defendants' standing argument is unavailing.

### 2.   Failure to State a Facially Plausible Claim

The Dau Defendants additionally argue Konair has failed to satisfy the standard required under Rule 12(b)(6) for each of its claims. The Court addresses the claims and arguments below.

### A.   Konair Has Not Plausibly Alleged the Existence of a Lien

The Dau Defendants argue that each of Konair's claims premised on the existence of a valid lien levied by the BOC—Counts I and III–V—must be dismissed because Konair has not plausibly alleged such a lien. The Dau Defendants rely on the New York Court of Appeals' decision in *Teichman by Teichman v. Community Hospital of Western Suffolk*, which states that "[t]he creation of a lien requires agreement or statute." 87 N.Y.2d 514, 515 (1996).[50] In the Second

---

[50]   Although the BOC declared the Aircraft abandoned pursuant to a Philippine statute, the Court believes New York law—not Philippine law—governs the question of whether the BOC created a lien on the Aircraft pursuant to the choice of law provision.

Amended Complaint, Konair admittedly does not point to an agreement or statute creating a lien on the Aircraft. Konair instead asserts that the BOC maintains an "equitable lien" stemming from Air Republiq's and the Dau Defendants' failure to post a bond—as required by the BOC to re-export the Aircraft—equaling "one and half times the ascertained duties and taxes" owed on the Aircraft.[51] When the BOC did not receive such payment, it declared the Aircraft abandoned and issued a Notice and Declaration of Abandonment. Konair alleges the outstanding taxes owed and Notice and Declaration of Abandonment constitute a "lien" that encumbers the Aircraft and prevents its removal from the Philippines.

"An equitable lien is a right to charge specific property or its proceeds with the payment of a particular debt." *Reisner v. Stoller*, 51 F. Supp. 2d 430, 453 (S.D.N.Y. 1999). *See also Dong v. Miller*, No. 16-cv-5836-NGGJO, 2018 WL 1445573, at *11 (E.D.N.Y. Mar. 23, 2018) (same). "New York law permits the imposition of an equitable lien on property if there is an express or implied contract, meeting certain requirements, concerning the property." *Sec. Pac. Mortg. & Real Estate Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir. 1992). *See Datlof v. Turetsky*, 489 N.Y.S.2d 353, 354 (N.Y. App. Div. 1985) ("The existence of an

---

[51]   ECF 25, ¶ 56.

equitable lien requires an express or implied contract concerning specific property wherein there is a clear intent between the parties that such property be held, given or transferred as security for an obligation."). *See also Miller v. Marchuska*, 819 N.Y.S.2d 591, 593 (N.Y. App. Div. 2006) ("Defendants are not entitled to an equitable lien, which requires an express or implied agreement that a lien encumber specific property, *i.e.*, that specific property is being given to secure an obligation."). As stated, Konair does not allege or point to any express or implied contract. Its claims are instead premised on the BOC maintaining an equitable lien over the Aircraft because the BOC previously did not allow Air Republiq or DGI to re-export it from the Philippines without the posting of a bond, and when they both failed to do so over a period of time, the BOC declared the Aircraft abandoned. But neither the posting of an export bond nor the Notice and Declaration of Abandonment—which does not refer to a "lien" and is simply a notification that the BOC considered the Aircraft abandoned—are express or implied agreements imposing an equitable lien on the Aircraft. Konair's factual allegations simply do not plausibly allege the existence of an equitable lien under New York law. In the absence of a lien, Counts I and III–V must be dismissed.

### B. Konair's Remaining Breach of Contract Claim (Count II)

Although largely duplicative of Count I, in Count II Konair alleges the Dau Defendants breached the Sales Documents by failing to pay the required amount to the BOC to permit Konair to export the Aircraft. Konair also alleges the Dau Defendants breached the BISPA by failing to comply with the "Outside Delivery Date" of May 31, 2018.[52]

The Dau Defendants first argue this claim—as well as Count I—must be dismissed against Teresa Dau individually because she was not a party to any of the Sales Documents. According to New York law, "[t]he essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Victory State Bank v. EMBA Hylan, LLC*, 95 N.Y.S.3d 97, 101 (N.Y. App. Div. 2019).[53] It is axiomatic that "[o]ne cannot be held liable under a contract to which he or she is not a party." *Id. See also Maki v. Travelers Cos., Inc.*, 44 N.Y.S.3d 220, 222–23 (N.Y.

---

[52]   The BISPA provided that "[d]elivery of the Aircraft shall occur on the Delivery Date in Manila, Philippines." [ECF 29-6, at 4.]

[53]   As noted above, the Sales Documents point to the application of New York substantive law.

App. Div. 2016) (affirming dismissal of breach of contract claim because "neither [defendant] had a contractual relationship with plaintiff"); *Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, 813 N.Y.S.2d 751, 752 (N.Y. App. Div. 2006) ("[T]he breach of contract cause of action was properly dismissed as to the respondent, since he was not a party to the agreement in question."); *Blank v. Noumair*, 658 N.Y.S.2d 88, 88 (N.Y. App. Div. 1997) ("[T]the plaintiff's breach of contract cause of action was properly dismissed inasmuch as the defendant was not a party to the agreements in question.").

Here, Konair alleges Teresa Dau is the "sole member" and "organizer" of DGI.[54] Konair does not allege Teresa Dau was a party to any of the Sales Documents. The Sales Documents themselves confirm this fact.[55] Although Teresa Dau signed the BISPA, she did so in her capacity as the "manager" of DGI, not in her individual capacity.[56] Therefore, Konair cannot maintain a breach of contract claim against Teresa Dau based on agreements she never executed in her individual capacity.

---

[54]   ECF 25, ¶¶ 7–8.

[55]   E.g., 29-6, at 2 (listing DGI and Konair as the only parties to the BISPA).

[56]   *Id*. at 13.

As to DGI, the Dau Defendants likewise argue Count II must be dismissed because DGI was not a party to the Bill of Sale. In response, Konair does not disagree, but instead points to the BISPA—executed by DGI—which Konair claims contains warranties by DGI that "the Aircraft was 'free and clear of liens, other than the Permitted Debt."[57] The Dau Defendants reply that Konair misconstrues the BISPA, which concerns only title to the trust estate, not the Aircraft.

The Court agrees with the Dau Defendants. In the BISPA, Konair agreed to "purchase from [DGI] the beneficial interests [ ] in the Trust Estate."[58] The BISPA warranted that: "[DGI] hereby represents and warrants to [Konair] that, upon delivery of the Bill of Sale, [DGI] shall have transferred all of [DGI's] title to the Trust Estate to [Konair] free and clear of all liens, other than the Permitted Debt."[59] The BISPA defines the "Trust Estate" as the "beneficial interests in the Aircraft."[60] Although purporting to sue under the BISPA, Konair makes no allegation as to the Trust Estate. Its breach of contract claim is wholly premised on the sale of the

---

[57]   ECF 37, at 5.

[58]   ECF 29-6, at 2.

[59]   *Id.* at 6. *See also id.* at 16. A New York federal court has defined "beneficial interest" as "a right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 233 (S.D.N.Y. 2011) (citing Black's Law Dictionary (9th ed. 2009)).

[60]   ECF 29-6, at 3.

Aircraft itself, which is memorialized in the Bill of Sale, an agreement DGI did not execute. Therefore, since Konair's reliance on the BISPA is misplaced and DGI was not a party to the Bill of Sale, Count II must be dismissed.[61]

### iv.   AJB's Motion to Dismiss

AJB argues Konair's claims against it must be dismissed because personal jurisdiction and venue are not proper in this forum. AJB—a Michigan limited liability company—filed this motion through its sole member, William Stawski, who is not admitted to practice before this Court. It is well established in the Eleventh Circuit that a corporation may not appear in federal court without an attorney. *Palazzo*, 764 F.2d at 1385; *National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 609 (11th Cir. 1984). This rule governs "even where the person seeking to represent the corporation is its president and major stockholder." *Palazzo*, 764 F.2d at 1385. Therefore, since AJB may not appear *pro se*

---

[61] Since these two arguments result in the dismissal of all of Konair's claims against the Dau Defendants, the Court need not reach the Dau Defendants' arguments pertaining to Konair's tort claims under Rule 12(b)(6).

and may not be represented by Stawski, the Court cannot consider the substance of its motion, which is **DENIED**.[62]

## III.   CONCLUSION

Konair's motion for leave to amend [ECF 43] is **GRANTED**. Wells Fargo's motion to dismiss is [ECF 29] **GRANTED**. The claims against it in its individual capacity are **DISMISSED WITH PREJUDICE**. The Dau Defendants' motion to dismiss [ECF 30] is **GRANTED**. The claims against the Dau Defendants are **DISMISSED WITHOUT PREJUDICE**. AJB's motion to dismiss [ECF 49] is **DENIED** and Konair's motion for jurisdictional discovery [ECF 52] is **DENIED AS MOOT**. AJB is **DIRECTED** to enter an appearance of counsel within 30 days after entry of this Order. The Court believes Konair should have an opportunity to file an amended pleading if it so chooses. Within 21 days after entry of this Order, Konair may file a Fourth Amended Complaint seeking to cure the deficiencies outlined here, excluding its claims against Wells Fargo. Defendants

---

[62] Konair's motion for jurisdictional discovery is premised on the Court granting AJB's motion to dismiss on jurisdictional grounds [ECF 52]. As noted, the Court cannot consider AJB's motion because it was filed *pro se* by a limited liability company. Thus, Konair's request for jurisdictional discovery is **DENIED AS MOOT**.

thereafter may file either an answer or dispositive motion in conformity with the

Local Rules of this Court.

     **SO ORDERED** this the 14th day of January 2021.

Steven D. Grimberg
United States District Court Judge
